UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ANTHONY CARL WILLIAMS,

      Petitioner,

v.                             Case No. 1:23cv137-AW-HTC

SECRETARY FLORIDA DEPARTMENT
  OF CORRECTIONS RICKY DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Anthony Carl Williams filed a petition under 28 U.S.C. § 2254, raising two grounds of ineffective assistance of counsel and seeking relief from his conviction for kidnapping and attempted sexual battery in the circuit court of Alachua County, Florida, Case No. 2018 CF 0980.  Doc. 2.  After considering the petition, the record, the Secretary's response, Doc. 21, and Williams' reply, Doc. 23, the undersigned recommends the petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    Offense and Conviction

On March 26, 2018, the victim was taking a break during her late-night shift as a receptionist at a hotel in Gainesville, Florida, when Williams entered the lobby. Doc. 21-4 at 2.  Williams, whom she had never met before, walked in carrying two

plastic bags and a cellphone. Doc. 21-3 at 243. He asked if the hotel had rooms and the victim said no. Despite that, he sat down in a chair next to the victim and began scrolling on his phone and talking with the victim. When she told him again that they had no rooms, he pulled a book out of his bag and said it was a Bible. She said she was a Christian as well and repeated that he needed to get his bags and leave. After he used the restroom and she refused his request to call the nearby Waffle House, she asked him to leave one last time. Instead of leaving, he grabbed her by the throat, put his face up to hers and said, "[S]hut up. Just give me five minutes." He then began pulling her from the living area into the lobby and then into the darkened dining area. As he was pulling her into that area he was pulling at her sweater and at her shirt just below where it lay over her belt line.

Eventually, just as he had gotten her into the darkened dining area, a guest of the hotel who had heard the disturbance arrived and began yelling at Williams to stop. The victim pushed herself free and began banging on the first door on the right for help. Suddenly, Williams ran out of the dining area through the lobby and out of the hotel.

After police arrived, they could not initially locate Williams, despite a K-9 tracker being deployed. They did notice, however, that Williams had left several items, including his cell phone. *Id.* at 350. The detective on the case applied for a search warrant for the phone and, in the meantime, confirmed that the video of the

attack was on the hotel's video, which was played for the jury. The detective also went to the Waffle House and viewed surveillance video which showed Williams sitting down with and conversing with a woman, A.R., who testified at trial regarding her interactions with Williams. Eventually, after the warrant was signed and the phone searched, the officers were able to identify Williams and arrested him.

The State charged Williams by information on April 30, 2018, in Alachua County Circuit Court Case No. 2018-CF-908 with kidnapping to inflict bodily harm or terrorize (Count I) and attempted sexual battery upon an adult without force likely to cause injury (Count II). A 2-day jury trial was held in March 2019, and the jury returned a verdict of guilty as to both counts. Doc. 21-4. The court sentenced Williams on March 28, 2019, to life imprisonment as a prison releasee reoffender on Count 1 and 5 years on Count 2. 21-5 & 21-13.

**B.    Postconviction History and Timeliness**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas relief must be filed within one year of certain trigger dates – the pertinent one here being one year from final judgment. 28 U.S.C. § 2244(d)(1)(A). Properly filed post-conviction motions, such as a motion under Florida Rule of Criminal Procedure 3.850, will toll the limitations period until the motion is fully resolved. *Id.* at § 2244(d)(2). In this case, the Secretary does not dispute, and the undersigned finds, the petition is timely filed.

Williams timely appealed his judgment and conviction to the First District Court of Appeals ("First DCA"), Case No.: 1D19-1332, which resulted in a per curiam affirmance without written opinion on April 30, 2020. Doc. 21-10. Williams did not file a motion for rehearing[1] or a petition for certiorari to the United States Supreme Court, Doc. 2 at 3, so the conviction became final on Wednesday, July 29, 2020.[2]

On December 15, 2020,[3] (after 139 days had run off the AEDPA one-year time limit) Williams filed a Motion for Postconviction Relief under Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 motion"), Doc. 21-14, which was continuously pending until September 8, 2022, when the First DCA issued its mandate affirming the circuit court's denial of the relief. *See* Case number 1D22-88; Doc. 21-21. While the appeal of the Rule 3.850 motion was pending, Williams filed a petition with the First DCA alleging ineffective assistance of appellate

---

[1] Williams checked the box saying he filed a motion for rehearing in his direct appeal, but the online docket in First DCA 1D19-1332 shows no such motion. Available at https://onlinedocketsdca.flcourts.org/DCAResults/CaseDocket?Searchtype=Case+Number&Court=1&CaseYear=2019&CaseNumber=1332

[2] On May 8, 2020, by prison mailbox rule Williams filed a motion to modify sentence pursuant to Florida Rule of Criminal Procedure 3.800(c). Doc. 21-12. On May 26, 2020, the trial court denied the motion. Doc. 21-13. Since this motion was pending entirely during the direct appeal, it does not affect the timeliness analysis.

[3] The Secretary identifies the date the motion was filed as January 14, 2021. However, the US Postal stamp on the envelope indicates the US Post Office received the motion on December 15, 2020, which is also the date Williams signed the motion. Thus, that is the filing date. *See* Habeas Rule 3(d) and *Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.).

counsel ("IAAC") which also tolled the AEDPA one-year limit.  Doc. 21-22 (First DCA Case No. 1D22-1413).  That state petition was continuously pending until February 23, 2023, when the First DCA denied the Williams' motion for rehearing and writing opinion (denying the petition).  Doc. 22-23; Doc. 22-24; Doc. 22-25. The instant petition was filed on May 24, 2023,[4] before the expiration of the one-year AEDPA deadline.  Therefore, the petition is timely.

## II.    LEGAL STANDARDS

### A.    The AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief.  28 U.S.C. § 2254.  Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  *White v. Woodall*, 572 U.S. 415, 419 (2014).  "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme

---

[4] The Secretary identifies the filing date as May 31, however, that is the date the clerk docketed the petition, not the date it was placed in the hands of prison officials.  Although there is no date stamp representing when that occurred, the US Postage stamp is dated May 24, 2023.

Court when the state court issued its decision. *Id.* A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of Petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

As stated above, Williams raises two grounds for relief premised on ineffective assistance of counsel ("IAC"). An IAC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of

reasonableness, and (2) prejudice resulted, *i.e*., that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.    DISCUSSION

### A.    Ground One: Ineffective assistance of counsel

As an initial matter, it is not clear which counsel, trial or appellate, Williams complains about in Ground One of the petition. While Williams titled Ground One

as "Ineffective Assistance of trial counsel", in his supporting facts, Williams alleges "appellate counsel failed to raise the issue that the trial court erred by denying petitions motion of acquittal" on Count II of the Information.  Specifically, Williams alleges, "[b]ased on the 'victims' own statement, the petitioner did not commit or attempt to the sexual battery".  Doc. 2 at 7-8.  Similarly, in his reply, Williams also focuses solely on appellate counsel's alleged deficiencies.  Doc. 23.

In the Secretary's response, the Secretary treats Ground One as making a claim of ineffective assistance of trial counsel because Williams failed to exhaust a claim for ineffective assistance of appellate counsel and is procedurally barred from doing so now[5].  Thus, because it is more favorable to Williams for this Court to do so as well, the undersigned will also treat Ground One as seeking to vacate the judgment based on a claim that trial counsel was ineffective for failing to properly move for a judgment of acquittal – a claim he raised in the 3.850 motion.

The circuit court denied relief on two bases.[6]  First, it concluded that a

––––––––––––––––––––

[5] Williams did not raise an IAC claim on direct appeal.  Doc. 21-7 at 16.  He only raised claims of ineffective assistance of trial counsel in his 3.850 motion.  Doc. 21-18 at 7 & 9.  And, although Williams raised two claims of ineffective assistance of appellate counsel in his state habeas petition, neither was premised on counsel's failure to raise the issue of trial court error for denying the motion of acquittal.  Doc. 21-22 at 15 & 22.  Also, since Williams' conviction became final in 2020, he cannot return to state court to exhaust this as an IAAC claim as it would be untimely.  *See* Fla. R. App. P. 9.141(d)(6) ("petition alleging ineffective assistance of appellate counsel on direct review must not be filed more than 2 years after the judgment and sentence become final on direct review").

[6] Because the First DCA affirmed the circuit court's denial of relief on Williams' amended 3.850 ruling without a written explanation, this Court will "look through" that decision to the last related

"defendant cannot challenge the sufficiency of the evidence underlying his conviction through a 3.850 motion, especially where there has been a direct appeal." Doc. 21-18 at 14-15. Second, it concluded "counsel did not make a 'boilerplate' motion for judgment of acquittal as to either count," and thus Williams could show neither deficient conduct nor prejudice. *Id.*

As the Secretary points out, the circuit court's first reason is not an accurate statement of Florida law. "A claim that counsel was ineffective for failing to preserve a sufficiency of the evidence claim for appeal by way of an adequate motion for judgment of acquittal is a cognizable rule 3.850 claim." *Neal v. State*, 854 So.2d 666, 670 (Fla. 2d DCA 2003) (citing *Boykin v. State,* 725 So.2d 1203 (Fla. 2d DCA 1999)). The circuit court's second basis, however, was neither contrary to the law or facts nor a misapplication of the facts to the law.[7]

Under *Strickland*, counsel was not deficient because he did, in fact, make the very arguments Williams makes here about the evidence being insufficient to convict him of attempted sexual battery. Counsel argued, for example, that the State's had presented no direct evidence of a sexual inclination. Instead, the State's

---

state-court decision that provides a relevant rationale, presume that the unexplained decision adopted the same reasoning and apply the AEDPA deference to that decision. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

[7] In assessing the reasonableness of the state court's ruling, this Court is not limited to the particular justifications provided by the state court and may consider any potential justification for its *ultimate* conclusion, including implicit findings it could have made in support of its ruling. *Pye v. Warden, Georgia Diagnostic Prison*, 50 F.4th 1025, 1036 (11th Cir. 2022).

evidence consisted of circumstantial evidence, namely, five statements made by Williams, which "do not clearly illustrate a sexual motivation for the offense" or "provide an illustration beyond and to the exclusion of any reasonable doubt." Doc. 21-3 at 469.  The circuit court, nonetheless, denied the motion because although Williams never stated he was going to sexually assault the victim, such intent could be reasonably inferred from his actions, including "dragging her, grasping at her pants." Doc. 21-3 at 469-72.

Under *Strickland*, Williams cannot show prejudice because, no matter how argued, a judgment for acquittal was not likely to be granted.  Under Florida Law, when considering a motion for judgment of acquittal, the court must view the evidence and all reasonable inferences from the evidence in a light most favorable to the State. *Jones v. State*, 790 So.2d 1194, 1197 (Fla. 1st DCA 2001) (*en banc*) (citations omitted). "If the State has presented competent evidence to establish every element of the crime, then a judgment of acquittal is improper." *State v. Williams,* 742 So. 2d 509, 510 (Fla. 1st DCA 1999).  Moreover, even when reviewing a judgment of acquittal in a *wholly* circumstantial evidence case, "[t]he State is not required to rebut conclusively every possible variation of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events.'" *State v. Burrows*, 940 So. 2d 1259, 1262 (Fla. 1st DCA 2006) (quoting *Darling v. State,* 808 So.2d 145, 156 (Fla.

2002)).

As the prosecutor and state court explained, sufficient competent evidence existed to establish every element of the crime and to exclude every reasonable hypothesis of innocence. When Williams first grabbed the victim by the throat, he told her to "shut up. Just give me five minutes." Doc. 21-3 at 251. He then began dragging her towards the darkened breakfast area, which is behind double doors from the lobby area. *Id.* at 252-53. She testified that, as she was being pulled toward the breakfast area, "[h]e was pulling at my sweater, and at my shirt, down near the bottom", which was "just below the belt line" of her pants. *Id.* at 255. She later discovered she had a scratch "down near the belt line" of her pants, *id.*, and that one of her shirt buttons had been ripped off, *id.* at 267. Reasonable jurists could interpret all these actions, which were captured on a video shown to the jury, as overt acts towards a sexual battery. Therefore, a judgment of acquittal would not likely have been granted, and Petitioner cannot show prejudice under *Strickland*. Williams is not entitled to relief on Ground One.

### B.    Ground Two: Ineffective assistance of counsel

As with Ground One, Williams' discussion of Ground Two is also not a model of clarity. While Williams refers to both ineffective assistance of trial and appellate counsel in the title of Ground Two, he focuses solely on ineffective assistance of trial counsel in the supporting facts. Specifically, Williams contends trial counsel

was ineffective for failing to argue the State failed to give 10-days prior notice of its intent to rely on *Williams* Rule evidence.[8]  Doc. 2 at 9.  Unlike Ground One, however, no liberal interpretation of Ground Two saves the claim from being procedurally defaulted.

Before seeking federal habeas relief under § 2254, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim" to the state's highest court, either on direct appeal or on collateral review.  *Picard*, 404 U.S. at 277-78.  A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'"  *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277).

_____

[8] The *Williams* Rule is derived from *Williams v. State*, 110 So. 2d 654 (Fla. 1959), a case in which the Florida Supreme Court held that evidence pertaining to prior bad acts or crimes committed by a defendant may be admissible if it is relevant for some purpose other than showing a defendant's propensity to commit the charged offense. *Id.* at 662. Here, the *Williams* Rule evidence admitted by the court was A.R.'s testimony regarding her conversation and interaction with Williams while at the Waffle House after Williams left the hotel.

Here, although Williams claims he raised this ground for relief on direct appeal, *id.* at 10, he did not. Instead, the *only* claim Williams raised on direct appeal was that the trial court erred in admitting *Williams* Rule evidence. That claim is not substantively the same claim as the one he raises in this petition. That claim was not premised on the ineffectiveness of counsel but on the trial court's error. *See Lefroy v. Sec'y for Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.24 (11th Cir. 2005) (noting that a substantive claim is "separate and distinct" from an ineffective assistance claim based on the substantive claim); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (distinguishing an ineffective assistance claim based on counsel's failure to object to a jury instruction from a substantive due process claim challenging the trial court's instruction of the jury). Therefore, this issue is unexhausted.

When a petitioner fails to exhaust his claim and the state court remedy is no longer available, that failure to exhaust is a procedural default. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim [ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Williams cannot return to state court to exhaust the claim because more than two years have elapsed since his judgment and sentence became final and any new petition would be denied as successive. *See* Fla. R. Crim. P.

3.850(b) and (h).  Finally, Williams has not alleged any facts sufficient to invoke either extraordinary exception.  The arguments raised in the petition go to "legal" rather than "actual" innocence.  *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  Williams is not entitled to relief on Ground Two.

## IV.    CONCLUSION

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.   In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007).   Additionally, this Court must consider the deferential standards prescribed by § 2254.  *See id.*   Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing.  *See id*.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

It is respectfully RECOMMENDED:

1.      That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Williams*, Alachua County, Florida, Case Number 2018 CF 0980, Doc. 2, be DENIED without an evidentiary hearing.

2.      That a certificate of appealability be DENIED.

3.      That the clerk be directed to close the file.

At Pensacola, Florida, this 17th day of May, 2024.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.